1 | KAREN P. HEWITT
United States Attorney
2 | REBECCA S. KANTER
Assistant U.S. Attorney
3 | California State Bar No. 230257
Federal Office Building
4 | 880 Front Street, Room 6293
San Diego, California 92101-8893
5 | Telephone: (619) 557-6747
Rebecca.Kanter@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Criminal Case No. 07cr3100-JAH |
|---|---|
| Plaintiff, | ) DATE: March 24, 2008 |
| | ) TIME: 2:15 p.m. |
| v. | ) |
| | ) Before Honorable John A. Houston |
| ANTONIO DE LEON-ARTEAGA, | ) |
| | ) MEMORANDUM OF POINTS AND |
| Defendant. | ) AUTHORITIES REGARDING |
| | ) EVIDENTIARY HEARING |

COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Rebecca S. Kanter, Assistant U.S. Attorney, and hereby files its Memorandum of Points and Authorities Regarding Evidentiary Hearing, which is based on the records of this case.

DATED: March 20, 2008.

        Respectfully submitted,

        Karen P. Hewitt
        United States Attorney


        <u>s/ Rebecca Kanter</u>
        REBECCA S. KANTER
        Assistant U.S. Attorney

# I

# STATEMENT OF FACTS

## A. DEFENDANT'S APPREHENSION

On October 21, 2007, Border Patrol Agent Veronica Morfin was conducting line-watch duties in the El Centro area of operations. Agent Morfin was notified by a Remote Video Surveillance System ("RVSS") operator that a group of three individuals were seen climbing over the fence into the United States. The RVSS operator maintained visual surveillance of the group and directed Agent Morfin to a farm field north of the canal. Agent Morfin responded with her service canine to track the group.

Because Agent Morfin was operating a canine unit, her vehicle contained a cage for the canine and was not equipped for transport of apprehended individuals. As a result, Agent Morfin radioed for assistance. Agent David Espino arrived and both agents identified themselves as Border Patrol Agents prior to conducting field interviews. Defendant falsely identified himself as Melecio Salas-Godoy and indicated that he was a citizen of Mexico with no legal right to be in the United States.

At the station, Defendant's biographical information, fingerprints and photograph were entered into the IDENT and IAFIS computer databases, revealing that Defendant has a criminal and immigration history. On October 21, 2007, at 2:02 p.m., Defendant was advised of Miranda rights and invoked his right to counsel.

## B. PROCEDURAL HISTORY

On March 5, 2008, Defendant filed a Motion to Suppress Statements. On March 7, 2008, the United States responded to Defendant's motions, noting that Defendant had not set forth any facts as to why his statements must be suppressed. On March 13, 2008, Defendant filed a Declaration in Support of Motion to Suppress, in which he swore under penalty of perjury that none of the agents asked him any questions and that he did not make any statements to the agents.

On March 17, 2008, this Court held a hearing and denied Defendant's Motion to Suppress Statements. The Court, however, construed Defendant's Declaration as a request for an evidentiary hearing regarding the lawfulness of his arrest and set an evidentiary hearing for March 24, 2008.

//

//

## II

## EVIDENTIARY HEARING

**A. AN EVIDENTIARY HEARING IS NOT REQUIRED BECAUSE THERE WAS PROBABLE CAUSE FOR THE ARREST BASED ON THE SWORN COMPLAINT**

Defendant was seen climbing over the fence from Mexico into the United States by an RVSS operator, who maintained constant visual surveillance. Defendant was then encountered by Agent Morfin just north of the border fence, three miles west of Calexico, California, with other individuals who claimed to be citizens of Mexico with no documents to be in the United States legally. Even without Defendant's statements as to his alienage, because he was seen climbing over the fence from Mexico and was not being admitted into the United States at a designated Port of Entry, Border Patrol had probable cause to arrest him. His field statements regarding his alienage support the probable cause to arrest him, but are not necessary in order to find that Border Patrol had probable cause to arrest him. An evidentiary hearing is not necessary nor would it be helpful to determine if probable cause existed because nothing in Defendant's declaration disputes the facts surrounding Defendant's manner and means of entry.

**B.   AN EVIDENTIARY HEARING WOULD PROVIDE NO REMEDY TO DEFENDANT**

If an evidentiary hearing was conducted, the outcome would be irrelevant because there would be no relief available to Defendant. The indictment itself cannot be dismissed because it was returned by a properly empaneled Grand Jury in the Southern District of California. Government conduct outside the grand jury indictment process itself can only be the basis of the dismissal of an indictment if the conduct is so outrageous that it violates "fundamental fairness" or is "shocking to the universal sense of justice." *See* United States v. Russell, 411 U.S. 423, 432 (1973). Even when government conduct outside the indictment process interferes with a constitutionally protected right, a defendant must show actual prejudice to warrant dismissal of an indictment. *See* United States v. Morrison, 449 U.S. 361, 364-66 (1981); *see also* United States v. Ross, 372 F.3d 1097, 1109-11 (9th Cir. 2004). Moreover, even if a Defendant can show prejudice, dismissal of the indictment is too drastic of a remedy when the prejudice can be remedied by the suppression of tainted evidence. *See* Morrison, 449 U.S. at 365.

Because dismissal of the indictment is not a remedy, the only other possible remedy available

1  to Defendant if this Court holds an evidentiary hearing is the suppression of tainted evidence. In <u>United
2  States v. Garcia-Beltran</u>, a defendant was arrested without probable cause (as the government conceded)
3  for being a deported alien found in the United States. 443 F.3d 1126, 1128 (9th Cir. 2006). In <u>Garcia</u>,
4  the district court held an evidentiary hearing and determined that one piece of evidence – the
5  Defendant's fingerprints – was seized, at least in part, for investigative purposes subsequent to the
6  unlawful arrest. <u>Id.</u> at 1129. Because they were taken, in part, for investigative purposes after an
7  unlawful arrest, the district court suppressed the fingerprints. <u>Id.</u> The district court, however, issued
8  an order compelling Defendant to provide a new set of fingerprints for identification purposes. <u>Id.</u> The
9  Ninth Circuit upheld the district court order compelling defendant to give a set of fingerprint exemplars
10 because "[t]he new set of fingerprints the government now requests, after the federal grand jury
11 indictment . . .has been returned, are not sought out of 'an investigative purpose' but 'serve only to
12 further establish his identity." <u>Id.</u> at 1134.

13     Here, Defendant's fingerprints were taken post-arrest for identification purposes. Even if the
14 Court held a hearing and found that they were also taken for investigative purposes and suppressed
15 them, the Court could – and, pursuant to <u>Garcia</u>, should – order Defendant to provide a new set of
16 fingerprints for identification purposes.

17     There are only two other potential types of evidence that followed from Defendant's allegedly
18 unlawful arrest. One was his body, and the other were his field statements. As to his body, courts have
19 clearly held that "the 'body' or identity of a defendant. . . .is never itself suppressible as the fruit of an
20 unlawful arrest, even if it is conceded that an unlawful search or interrogation occurred." <u>INS v. Lopez-
21 Mendoza</u>, 468 U.S. 1032, 1039 (1984). Nor would any of the evidence that flowed from the seizing of
22 his body as evidence – including evidence of his identity and prior record – be suppressed. <u>United
23 States v. Guzman-Bruno</u>, 27 F.3d 420, 421-22 (9th Cir. 1994); *see also*, <u>Garcia</u>, 443 at 1133 ("The
24 Ninth Circuit has consistently held that evidence concerning th identity of a defendant, obtained after
25 an illegal police action, is not suppressible as 'fruit of the poisonous tree.'"); *see also*, <u>United States v.
26 Roque-Villanueva</u>, 175 F.3d 345, 346 (5th Cir. 1999) (accord) .

27     As to Defendant's field statements, as this Court held in denying Defendant's Motion to
28 Suppress, Defendant filed a sworn declaration that he made no statements. Because of this, he has no

4

basis to now demand an evidentiary to attempt to suppress evidence that he has sworn under penalty of perjury does not exist.

In sum, an evidentiary hearing would be a waste of the court's time and resources because Defendant can derive no benefit from the outcome. Dismissal of the indictment is not a remedy, and there is no evidence to suppress except possibly Defendant's fingerprints. Even if Defendant's fingerprints were suppressed, the Court could properly order them to be taken again. *See* United States v. Ortiz-Hernandez, 427 F.3d 567, 576-77 (9th Cir. 2005) (Government may have defendant fingerprinted and use criminal and immigration records in Section 1326 prosecution). Therefore, conducting an evidentiary hearing would not advance Defendant's cause or the Government's cause, or in any way further any genuine issues in the case.

**IV**
**CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court decline to hold an evidentiary hearing regarding the lawfulness of Defendant's arrest.

DATED: March 21, 2008.

                                        Respectfully submitted,

                                        KAREN P. HEWITT
                                        United States Attorney

                                        s/ Rebecca Kanter
                                        REBECCA S. KANTER
                                        Assistant U.S. Attorney

5