KAREN P. HEWITT
United States Attorney
NICOLE ACTON JONES
Assistant U.S. Attorney
California State Bar No. 231929
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5482; Facsimile: (619) 235-2757
Nicole.Jones@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Criminal Case No. 07CR3100-JAH |
|---|---|
| Plaintiff, | ) DATE: May 12, 2008<br>) TIME: 11:30 a.m. |
| v. | ) Before Honorable John A. Houston |
| ANTONIO DE LEON-ARTEAGA, | ) STATEMENT OF FACTS AND<br>) MEMORANDUM OF POINTS AND |
| Defendant. | ) AUTHORITIES IN SUPPORT OF MOTIONS<br>) *IN LIMINE* |

**I**

**STATEMENT OF THE CASE**

On November 14, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging defendant Antonio De Leon-Arteaga ("Defendant") with Attempted Entry After Deportation, in violation of Title 8, United States Code, Section 1326.  On November 15, 2007, Defendant was arraigned on the Indictment and entered a plea of not guilty.

At the initial motions hearing on March 17, 2008, the Court denied Defendant's motions to dismiss the indictment and strike surplusage.  The Court set an evidentiary hearing on Defendant's motion to suppress statements.  At the conclusion of the evidentiary hearing on March 24, 2008, the Court denied Defendant's motion to suppress and set a motions *in limine* date of May 5, 2008, which was subsequently continued to May 12, 2008.  The Government's motions for fingerprint exemplars and for reciprocal discovery remain pending.

# II

# STATEMENT OF FACTS

**A.     APPREHENSION OF DEFENDANT**

On October 21, 2007, Border Patrol Agent Morfin was conducting linewatch duties in the El Centro area of operations. Agent Morfin was notified by a Remote Video Surveillance Systems ("RVSS") operator that a group of three individuals had made an illegal entry into the United States. The RVSS operator maintained visual on the group and directed Agent Morfin to a farm field north of the canal. Agent Morfin responded with her service canine to track the group. Agent Morfin encountered Defendant and two other individuals approximately 3 miles west of the Calexico, California Port of Entry. Agent Morfin identified herself as a Border Patrol Agent and conducted an immigration interview. Defendant admitted he was a Mexican citizen and that he did not have documents allowing him to be in the United States legally. Defendant also admitted he had entered the United States on October 21, 2007 by walking across the border.

At the station, Defendant's biographical information, fingerprints and photograph were entered into the IDENT and IAFIS computer databases, which revealed Defendant's criminal and immigration history. On October 21, 2007, at about 2:02 p.m., Defendant was advised of his Miranda rights.. Defendant elected to invoke his right to counsel. Defendant was advised of his right to speak to consular office and declined.

**B.     DEFENDANT'S IMMIGRATION HISTORY**

Defendant appeared before an Immigration Judge for a deportation hearing on March 10, 1998. Defendant was physically removed from the United States through the Laredo, Texas Port of Entry on June 5, 1998. Defendant's 1998 deportation order was reinstated and Defendant was physically removed from the United States to Mexico on March 13, 2007 through the Del Rio, Texas Port of Entry.

**C.     DEFENDANT'S CRIMINAL HISTORY**

On November 24, 1992, Defendant was convicted of First Degree Sexual Assault on a Child under the age of 13 in Wisconsin state court. The victim was Defendant's young daughter and the abuse spanned a period of 18 months. Defendant was sentenced to 8 years in prison.

//

On February 14, 2002, Defendant was convicted in Texas state court of a DUI and sentenced to 10 days in jail. On March 28, 2003, Defendant was convicted in Texas state court of driving with a suspended license and was sentenced to 10 days in jail.

On October 29, 2003, Defendant was convicted of Illegal Re-Entry in the Western District of Texas. Defendant was sentenced to 52 months in prison and 3 years of supervised release.

## III

## MOTIONS *IN LIMINE*

**A.    THE COURT SHOULD ADMIT A-FILE DOCUMENTS AND TESTIMONY**

   1.    <u>A-File Documents are Admissible as Public Records or Business Records</u>

The United States intends to offer documents maintained by the former Immigration and Nationalization Service and current Department of Homeland Security regarding Defendant. The agency maintains an "A-file" or "Alien-file" on Defendant, which contains documents reflecting most of Defendant's immigration encounters. The United States moves to introduce A-file documents to establish Defendant's alienage, prior deportations, and that he was subsequently found in the United States without having sought or obtained authorization from the Attorney General. The documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6).

The Ninth Circuit has addressed the admissibility of A-File documents in <u>United States v. Loyola-Dominguez</u>, 125 F.3d 1315 (9th Cir. 1997). There, Loyola-Dominguez appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from the illegal immigrant's A-file. <u>Id.</u> at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. Loyola-Dominguez argued that admission of the documents violated the rule against hearsay and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. <u>Id.</u> at 1318. The court first noted that documents from a defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." <u>Id.</u> (quoting <u>United</u>

1  States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)).  The court also held that such
2  documents are self-authenticating and, therefore, do not require an independent foundation.  Id.
3       Loyola-Dominguez is simply among the more recent restatements of the public records and
4  business records rules.  Courts in this Circuit have consistently held that documents from a defendant's
5  immigration file are admissible in a § 1326 prosecution to establish the defendant's alienage, prior
6  deportation and lack of permission to re-enter the United States.  See United States v. Mateo-Mendez,
7  215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence as
8  absence of a public record); United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (holding
9  warrant of deportation admissible to prove alienage); United States v. Contreras, 63 F.3d 852, 857 (9th
10 Cir. 1995) (district court properly admitted warrant of deportation as public record); United States v.
11 Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant of deportation as public
12 record).

     2.     <u>Visa Package with Mexican Birth Certificate May Be Used As Evidence of Alienage</u>

14      The Government intends to offer documents related to the issuance of Defendant's I-551, legal
15 permanent resident card in 1983.  These documents include 1) Application for Immigrant Visa and Alien
16 Registration dated May 27, 1983; 2) Defendant's certified Mexican Birth Certificate and translation,
17 submitted with the Application for Immigrant Visa and Alien Registration; 3) Immigrant Visa and Alien
18 Registration dated May 27, 1983; 4) Defendant's Mexican National Military Service card and
19 translation, submitted with the Application for Immigrant Visa and Alien Registration; and 5)
20 Application By Lawful Permanent Resident For an Alien Registration Receipt Card, Form I-551, dated
21 May 22, 1984.  These documents are relevant to show alienage.  See United States v. Benjamin Lopez-
22 Patino, 391 F.3d 1034, 1038 (9th Cir. 2004) (holding that the district court did not err in denying the
23 motion for acquittal when the Government provided evidence of alienage, including a cover page from
24 an immigrant visa issued by the American Consulate in Mexico that indicated that Lopez-Patino was
25 born in Mexico).

26      Each of the documents indicated above were contained in Defendant's A-file.  Defendant's
27 attorney personally reviewed Defendant's A-file and requested copies of certain documents.  Those
28 documents, including the documents listed above, were produced to Defendant on January 31, 2008.

Therefore, as stated previously, these A-file documents are admissible under the public records exception and the business records exception. Moreover, these documents are also admissible as an adoptive admission by a party opponent. See Fed. R. Evid. 801(a), (d)(2)(B).

Lastly, the Mexican Birth Certificate does not violate the Confrontation Clause of the Sixth Amendment which protects the defendant's right to cross-examine adverse witnesses. This right extends to out-of-court "testimonial" statements made by unavailable declarants where there was no prior opportunity for cross-examination. This Circuit has held that birth certificates represent the "routine cataloguing of an unambiguous factual matter" and are thus non-testimonial in nature. United States v. Bahena-Cardenas, 411 F.3d 1067, 1075 (9th Cir. 2005). Thus, the admission of Defendant's birth certificate would not violate his rights under the Confrontation Clause.

3. A Certificate of Non-existence Is Admissible

The United States moves to introduce a Certificate of Non-existence of Record ("CNR"), prepared by an authorized official at the Department of Homeland Security and certifying that there are no records in any of the Department's databases, files, or archives that Defendant has ever applied for, or been granted, permission to reenter the United States following his deportation. The Ninth Circuit has held that a CNR is not "testimonial" within the meaning of Crawford v. Washington, 541 U.S. 36 (2004) and therefore that its admission into evidence does not violate the Confrontation Clause of the United States Constitution. See United States v. Cervantes-Flores, 421 F.3d 825, 831-33 (9th Cir. 2005).

**B. THE COURT SHOULD PROHIBIT COLLATERAL ATTACK OF DEFENDANT'S PRIOR DEPORTATION**

In United States v. Mendoza-Lopez, 481 U.S. 828, 834-35 (1987), the Supreme Court held that the lawfulness of a prior deportation order is not an element of the crime of illegal re-entry of an alien following deportation, exclusion or removal: "The language of the statute, however, suggests no such limitation [proof of a lawful order of deportation], stating simply that 'any alien who has been arrested and deported or excluded and deported,' 8 U. S. C. § 1326 (1), will be guilty of a felony if the alien thereafter enters, attempts to enter, or is at any time found in, the United States, 8 U. S. C. § 1326 (2)." In 1996, Congress codified the Mendoza-Lopez decision, and its progeny, in 8 U.S.C. § 1326(d), entitled "Limitation on collateral attack on underlying deportation order." That statute provides a three-step

5

1  process for collaterally challenging an underlying deportation proceeding. If the deportation order is
2  successfully challenged collaterally it cannot be used to establish prior deportation.
3        The Ninth Circuit expressly held in United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir.
4  1996) (en banc), that "the lawfulness of [a] prior deportation is not an element of the offense under §
5  1326" and that, accordingly, an alien charged under § 1326 is "not entitled to have the issue determined
6  by a jury." Id. at 493. If Defendant does not successfully complete the three-step process under 8 U.S.C.
7  § 1326(d) to successfully attack his order or deportation, this Court should refuse to submit the
8  lawfulness of Defendant's underlying deportation to the jury.

9  **C.   THE COURT SHOULD ADMIT DEFENDANT'S PRIOR ADMISSIONS**

10      1.   Defendant's Admissions During His 2003 Plea Colloquy Are Admissible

11        The United States intends to offer into evidence admissions Defendant made during prior
12  criminal proceedings. Specifically, on August 26, 2003, Defendant entered a guilty plea in the Western
13  District of Texas to charges that he violated 8 U.S.C. § 1326 [Crim. Case No. 03CR0194-HLH]. The
14  Government has ordered copies of the conviction documents from this case and will produce a transcript
15  of the plea colloquy as soon as it is received. The certified copy of the transcript will be self-
16  authenticating as a certified copy of a public record. Fed. R. Evid. 902(4). A transcript certified by the
17  court reporter is presumed to accurately reflect testimony during proceedings. See 28 U.S.C. § 753(b).
18        The United States will offer a redacted version of the transcript and will only refer to it as sworn
19  testimony in a prior proceeding. The sworn testimony will be Defendant's admissions of alienage,
20  deportation, and absence of permission. This evidence is directly relevant to prove the elements of the
21  instant offense. See Fed. R. Evid. 402 (stating in part, "All relevant evidence is admissible. . . ."). 
22  Defendant's statements are admissible as non-hearsay under Rule 801(d)(2). The Government will
23  provide Defendant with a redacted version of the transcript in advance of trial. The Government will
24  be prepared to present evidence to establish the foundation for the prior conviction if Defendant will not
25  stipulate.

26      2.   Defendant's Admissions During His 1998 Deportation Proceeding Are Admissible

27        Defendant appeared before an immigration judge for a deportation hearing on March 10, 1998. 
28  This hearing was recorded and the audio tape was produced in discovery on December 21, 2007. During

the course of this deportation hearing, Defendant made admissions regarding his citizenship. Defendant's admissions are relevant because they tend to prove an element of the charged crime, namely his alienage. See Fed. R. Evid. 401. Absent a stipulation, the United States may play a portion of this tape, accompanied by a transcript as part of its case-in-chief.

Further, a Government witness will testify that these tapes are regularly compiled at immigration hearings, which are civil proceedings involving the Government. The statements are admissible as records of regularly conducted activity, Fed. R. Evid. 803(6), and public records, Fed. R. Evid. 803(8). Both Rule 803(6) and 803(8) allow the admission of data compilations in any form, including tapes. Moreover, the Ninth Circuit has affirmed the admission of such tapes under these evidentiary theories in criminal cases before. See United States v. Johnson, 297 F.3d 845 862-863 (9th Cir. 2002).

### D. THE COURT SHOULD ADMIT 609 EVIDENCE

Rule 609 provides that evidence that an accused has been convicted of a crime punishable by imprisonment in excess of one year "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial value to the accused." United States v. Martinez-Martinez, 369 F.3d 1076, 1088 (9th Cir. 2004). The Ninth Circuit has set forth five factors that the district court should balance in making the determination required by Rule 609. United States v. Browne, 829 F.2d 760, 762-63 (9th Cir. 1987). Specifically, the court must consider: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility. Id. at 762-63. See also United States v. Hursh, 217 F.3d 761 (9th Cir. 2000).

If Defendant chooses to testify, his credibility will be a central issue in the case and Defendant's character for honesty is a factor that should be carefully weighed by the Court. The importance of Defendant's testimony is crucial in a case such as this, where Defendant would presumably be called to testify only if he intended to claim that: (1) he was involuntarily brought to this country; (2) he did not have a conscious desire to enter the United States; (3) he was never actually deported; (4) he was not an illegal alien; or (5) he had received the permission to re-enter the United States, even though DHS has no record of such permission being granted.

1  Should the defendant testify, the Government should be permitted to demonstrate Defendant's
2  lack of trustworthiness by utilizing for impeachment purposes his prior felony conviction for being a
3  deported alien found in the United States. The Government does not seek to introduce the nature of the
4  prior conviction, but rather the fact that in 2003 Defendant was convicted of a felony. Whatever risk
5  of unfair prejudice that exists can be adequately addressed by means of an appropriate limiting
6  instruction. Accordingly, the Government should be allowed to introduce evidence of Defendant's prior
7  felony conviction under Rule 609(a) if he elects to testify at trial.

**E.    THE COURT SHOULD ADMIT EXPERT TESTIMONY BY THE GOVERNMENT**

9  At trial, the Government intends to offer testimony of a fingerprint analyst to identify the
10 Defendant as the person who was previously deported. Once a trial date has been set in this matter, the
11 Government will arrange to have a fingerprint expert take and analyze Defendant's fingerprints. The
12 Government will provide Defendant with the required expert disclosures.

13 If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining
14 a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed.
15 R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the
16 facts at issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536,
17 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion
18 may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type
19 reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide
20 opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact.
21 Fed. R. Evid. 704.

22 The Government anticipates that the fingerprint expert will testify that based upon fingerprint
23 comparisons, Defendant was the same person deported on June 5, 1998 and March 13, 2007, and who
24 was found in the United States on October 21, 2007. In addition, the Government's fingerprint expert
25 may testify to establish the foundation for related to Defendant's 2003 conviction in the Western District
26 of Texas. This testimony should be admitted under Rules 702 and 703.

27 //
28 //

## F.   THE COURT SHOULD PRECLUDE ARGUMENT CONCERNING DURESS OR NECESSITY

Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 522 U.S. 826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the Defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, Defendant must establish a prima facie case that:

(1)   Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2)   Defendant had a well-grounded fear that the threat would be carried out; and

(3)   There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A Defendant must establish the existence of four elements to be entitled to a necessity defense:

(1)   that he was faced with a choice of evils and chose the lesser evil;

(2)   that he acted to prevent imminent harm;

(3)   that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4)   that there was no other legal alternative to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing

satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

### G. THE COURT SHOULD EXCLUDE WITNESSES EXCEPT THE CASE AGENT

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. The United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

### H. UNITED STATES' RENEWED MOTION FOR RECIPROCAL DISCOVERY

The Court granted the United States' request for reciprocal discovery. As of the date of these motions, Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

## IV
## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court grant its motions *in limine*.

DATED: April 28, 2008.

Respectfully submitted,

Karen P. Hewitt
United States Attorney

s/ ***Nicole Acton Jones***
NICOLE ACTON JONES
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>　　　　v.<br>ANTONIO DE LEON-ARTEAGA,<br>　　　　　Defendant. | Case No. 07CR3100-JAH<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

　　　I, NICOLE ACTON JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

　　　I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S MOTIONS *IN LIMINE*** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

　　　Erica Zunkel, Federal Defenders of San Diego, Inc..

　　　I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

　　　None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

　　　I declare under penalty of perjury that the foregoing is true and correct.

　　　Executed on April 28, 2008.

　　　　　　　　　　　　　　　　/s/ ***Nicole Acton Jones***
　　　　　　　　　　　　　　　　NICOLE ACTON JONES